Dervishi v. Department of Special Education Ms. Stephenson Good morning, Your Honor. I see you have reserved two minutes for rebuttal. You may proceed. Thank you, Your Honor. We are here to appeal the decision of the District Court's adoption of the Magistrate Judge's recommended ruling on remand. But I'd like to clarify that we are not appealing it in its entirety. Specifically, we are not appealing the ruling regarding the prospective compensatory education recommendation that the parents do have the opportunity to supplement the record to support an award for compensatory education. We are also not appealing, of course, the Court's order to remand to calculate the full value of the home program. What we are appealing is the District Court's calculation of the total value of that program because the District Court did not implement this Court's order. Specifically, we are appealing the District Court's calculation for the duration and the amount of that award. With regard to the duration, this Court ordered the District Court to calculate the total value of the home program as specified in the settlement agreement for the period from November 18, 2010 until a dispute over the 2010-11 IEP is no longer pending and to pay Mr. Dervishi that amount. Well, the issue we have is that the no longer pending part. When this Court issued its ruling, the IEP, the dispute, rather, was no longer pending when this Court issued its ruling on August 4, 2016. Of that, looking at the briefs, I do not believe that that date is undisputed by the parties. Certainly, it's not undisputed by us, and that is when this Court issued its ruling. So, that would be a duration from November 18, 2010 until August 4, 2016. The duration then would be a total of 298 weeks. However, the District Court found the duration was only 28 weeks. They decided that based on November 18, 2010 as the starting date through June 24, 2011. That date was not based on an ending date of the dispute. It was based on the ending date of certain invoices the parent submitted to the Board for reimbursement. And that is why we believe that calculation is incorrect. In doing so, the District Court impermissibly based the duration on contracts, not on the statutory stay-put provision, or even on the Court's mandate. With regard to the amount that we are disputing, again, the District Court impermissibly based their decision on contracts and not on the statutory stay-put provision with regard to the amount. Because, as I said in this Court's ruling, they were to calculate the total value of the home program as specified in the settlement agreement. Well, the home program as specified in the settlement agreement was for the Board to pay $2,500 per week, $2,500 per week. The District Court, however, looked only at the invoices submitted by the parent and not the total value of the program. The total value was not simply the invoices submitted. The total value as specified in the agreement was the $2,500 per week. The Court also impermissibly shifted the burden for stay-put onto the parent by doing that instead of on the Board where it remained. The District Court made the parent responsible for the provision of services and the reimbursement only for what she was able to pay, when the Board actually had the obligation during the pendency to provide the services and to reimburse the parent. It was not the parent's burden. On behalf of the capitalists at Sagan, ordinarily, a stay-put period ends when an adequate, when an IEP is implemented, that provides a phase. Am I correct? That's correct, Your Honor. However, in this case, the IEP that was disputed, the parent rejected, and it was never implemented. So that's why this Court, I believe, decided that the program that was in place… Excuse me, but it may have been rejected, but has there been a determination as to whether it would have provided a fair and appropriate public education? That was decided by this Court on August 4th, 2016. So that is why we're saying the ending date is August 4th, 2016, because that was the culmination of the administrative and judicial proceedings on that IEP. When was that IEP promulgated? That was in 2010. But again, right after it was proposed, the parent rejected it and filed for due process. Yeah, but here's the thing. I mean, if the IEP did provide for a FAPE, I'm not sure I understand why the stay-put provision requires the Board to continue to pay $2,500 a week after that. If it provided… I mean, look, I mean, I understand that parents might… they are free to reject, but that doesn't mean that the IEP didn't provide a FAPE. Well, that's correct, Your Honor, but that wasn't decided until August 4th, 2016. And even if it had provided FAPE, as this Court had, I believe, ruled, looking at the decision, that that does not eliminate the Board's obligation under stay-put for that time period between the time the parent objected to the IEP and the time this Court made its final decision on it. I think your argument, then, is that a stay-put provision, which is… a stay-put provision gets extended by litigation rather than terminated when the Board promulgates an IEP that furnishes a FAPE. Well, yes, I believe, looking at this Court's decision, that issue was evaluated, and I believe the order was that even though FAPE was provided, and even though the settlement agreement had a contemplated time duration that was smaller until that IEP was implemented, the IEP first never was implemented, and this Court found that stay-put still was in effect during that pendency period while the parent had that right to object to the implementation of that IEP. Which order is that? That this Court's order of remand to the District Court to calculate the value of… total value of the home-based program. That was in, I believe, this Court's decision, if I read that correctly. So, that being the case, then the date that the District Court came up with… You know, this case has been around a long time. Right. What was the date of that order of remand? I may have been honest. Well, the date was the August 4th, 2016 date. Oh, August 4th. Okay. Yes. So, it's my understanding from that decision, then, the August 4th, 2016 decision was on both two issues. One was FAPE and one was stay-put, and this Court found that FAPE was provided but that stay-put was… that the Board had the obligation to provide the services to the child and, in lieu of that, to pay reimbursement for those services that were not provided. And there was further money… Ms. Stevenson, this is Judge Bianco. Let me ask you, with regard to the services, you're challenging the denial of the reimbursement for the hours that were spent by Mr. Ritchie with respect to assisting, I guess, with the ABA services. But isn't it pretty clear from the testimony and the program in place itself, as well as the settlement agreement, that it's ABA services that would be reimbursed, which would obviously entail qualified professionals, which Mr. Ritchie was not, right? Well, again, and coming in this detail and looking at all the documents, I tried to simplify it as best as I could, and I think that it got mixed up and the District Court got mixed up because of the arguments made by the… So, if you look at it in its totality, the directive from this Court was simply to calculate the total value of the home program that was specified in the settlement agreement, which was for four services to be provided. Now, and in that settlement agreement for those four services, the Board had agreed on the $2,500 per week. Now, what happened after that was the Board contested that in various ways. First of all, when the parent presented her invoices, they were not reimbursed by the Board. Let me just correct you. It didn't say services. It said ABA services, right? Yes. The parent provided – well, she provided additional services, as well. If she thinks they're not providing sufficient ABA services and that the solution is not I'm going to substitute myself, I become an ABA service. I don't think by any rational reading of that language that you're entitled to ABA services that that would include a parent who's not qualified in ABA. Well, that comes under the Burlington… It didn't say any services or services as necessary. It said ABA services. Right. And that's the whole Burlington-Carter argument the Board was making and under Buck County, as well. But I haven't gotten there yet because I don't think that the Burlington-Carter conditional reimbursement model is the correct model for the District Court to follow in the first place. The initial order was for state-put reimbursement, and that comes under DOE, first of all, and it comes… Our remand order was to calculate the total value of the home property as specified in the settlement agreement. So, by virtue of our mandate, we were telling the District Court to go by what the settlement agreement says, right? For ABA services. For ABA services, right? Well, for four services. There was speech, OT, ABA services, and autism consulting. Right. Those are the four services. The parent can provide none of those services. Pardon me? The parent can provide none of those services, overall professional services is my point. That's correct, and that's why it was the Board's responsibility to provide them. But instead, the Board tried to get around their responsibility and made a deal with the parent and said, okay, we'll pay up to $2,500 per week if you provide them first, and then you get the providers and you pay them, and then we'll just reimburse you, which is not what state-put said. That was impermissibly shifting the burden onto the parent when it was the Board's responsibility to provide them, A, to provide them themselves. But if the parents accept that burden, and there are parents who would prefer to select the providers to provide services to their kids, what's wrong with that? Nothing wrong with an agreement. However, what happened after that was that the agreement was broken. Number one, the Board refused to reimburse for the expenses that the parent provided, and number two, they were developing another IEP, which the parent rejected. So state-put came into play at that point. And so if you're going to go back and say, we'll look at the settlement agreement for state-put services. What were the services? What was the home program in effect, the functioning program in effect at the time? And that was for four services. And, okay, what is the value of those four services? Well, we're not going to just look then to what the parent could afford because that's not appropriate under DOE. Under DOE, the reimbursement of compensatory education of both for the full value of services that the educational agency was required to fund, not the lesser value of the services the parent was able to afford. So that's what I'm saying. So if that's not the appropriate standard to look at under DOE, is what the parent was able to afford, then we have to look back at what was the value of the home-based program. According to the agreement, it was $2,500 per week. Now, if you're going to look at the Burlington-Carter thing and go into all the details and shift the burden to the parent, okay, what was the parent able to afford? Well, she was only able to afford X number of dollars, so that's all we're going to pay. That's a different standard, and that's not under state-put. That is not what state-put calls for. It's not the purpose of IDEA under state-put. It's to provide the services during the pendency of the dispute, and that's a board obligation. That's not a parent obligation. And so the district court, A, did not do what this court mandated to calculate the full value of the home-based program in place at the time, which was the board's responsibility under state-put during the pendency period, and the district court did not look at the appropriate pendency period. The appropriate pendency period was from November 10th, November 18th, 2010, to August 4th, 2015, 298 weeks times $2,500 per week. The board's responsibility was a total of $745,000. That's a very simple calculation to make. All right. Ms. Stephenson, I think your time is up. Before, I just had one question. It's something you said in the beginning because I want to make sure I understood what you said. In your brief, I think it's on page 35, the heading says the district court denied to compensate education services to TD. Did you say you're withdrawing any argument for compensatory education? Is that what you said? No. From my reading, there were two different. The district court separated out compensatory damages from compensatory education. All right. So you're withdrawing to the extent it could be interpreted you were challenging the compensatory education. You're saying you're not. Right. We're not disagreeing with the district court with regard to the ability to go back and provide the adequate record for the compensatory education service. All right. Thank you for clarifying that for me. I appreciate it. All right. You've deserved your rebuttal time. We'll hear from Mr. Baterla. Thank you, Your Honor. Good morning. I'm Richard J. Baterla on behalf of the defendant Applee in connection with this matter. And this matter arises out of a very limited remand that was issued by this court on August 2016. And, yes, Judge Jacobs, you were on that panel. The specific summary order by this court found that the board, in fact, did provide a fate for the 2010-2011 school year, that the board had not breached the 2009 settlement agreement. And the remand order was to calculate the total value of the home program as specified in the settlement agreement. And what was the evidentiary basis for finding that an IEP had been drawn that would provide a fate? Well, that was decided by the court in the district court after a full review of the administrative hearing and the record. And then that was appealed to this court. This court ruled that, in fact, a fate was provided for 2010-2011. More importantly, this court also found that there was no breach of the 2009 settlement agreement. And on the limited, narrow remand, this court directed the district court to calculate the total value of the home program as specified in the settlement agreement for the period from November 18, 2010, until the dispute was over. And I believe the court and the parties have all used the August 2016 date of the order from this court as the date for when the dispute was over. But the important and salient provision or salient mandate was the order to calculate the home program based upon as specified in the settlement agreement. And as this court has noted in the argument before with plaintiff's counsel, the board agreed to reimburse the parents in the amount of $2,500 a week for the cost of speech, occupational therapy, ABA services, and autism consulting services. That is exactly through three days of trial that the district court evaluated and determined by looking at what the actual costs were that were paid by the parent and in order to reimburse as specified in the settlement agreement was given in the decision of the district court for those services. Suppose neither parent can afford to pay anything and the child doesn't get any of these services. What happened to the board's obligation? Your Honor, this settlement agreement is an interesting document. The services that were being provided and the service providers were all chosen by the parents. There was a unilateral placement of the student into the home-based program. That's what Paragraph 3 on A153 of our appendix states in the settlement agreement. It's one thing to pick a service provider, but the service provider is not going to provide any services without getting paid. So if you can't pay the service provider, no services are provided. Am I correct? Well, yes, in that hypothetical it would be correct. However, the district court found that at no time did the parent submit an invoice or a canceled check after the commencement of due process to the Stanford Board of Education for reimbursement. What was that date? It was in 2011, Your Honor. No such request was ever made. And if I may, in this specific case on A49 of our appendix, in the district court opinion, when the court is discussing the Buck County decision, among other things, the court noted, based upon the proof that was presented, nor is the court persuaded by plaintiff's argument that she was forced to provide home-based services for her son because she was unable to pay qualified providers. The court rejected that. There was no finding here that this parent couldn't pay. There was no finding here that qualified providers were not available, nor was there a breach of the IDEA here. Unlike the Buck County decision. The request here was different than the argument you just heard. The request here was for the parent to be reimbursed for her time. And as this court knows, compensatory damages are not available under IDEA, nor is she a qualified provider, nor, unlike Buck County, was there a violation of the IDEA, nor was there a breach of the 2009 settlement agreement by the board. Also, unlike Buck County, the parent was not supervised by qualified providers, nor was she trained. She only received training for generalization services by a Dr. Bader as a parent. And the district court, after three days of testimony, expressly rejected the equivalent services argument that was part of the analysis, if you will, in Buck County. This is a vastly different case than Buck County, and the remand was very narrow, as specified in the settlement agreement. The service providers were chosen by the parent. They didn't submit for reimbursement. Indeed, they didn't submit for reimbursement until we were back in the district court. Let me ask you this. Your petition is that there was no request made for compensatory education in the litigation, and therefore, that's the law of the case, or it's waived? That's part of our position, Your Honor. First of all, my position on compensatory education, and I was trying to hear, and I wasn't clear if it was withdrawn or not, and I heard the court go back and inquire. So assuming that the compensatory education issue is still in this case, I would say it was never properly in this case because, one, it wasn't part of the remand. It wasn't part of the home-based program. It wasn't part of the narrow remand. Number two, there was absolutely no proof of any kind with respect to – there was no – three days of testimony. There was no compensatory education plan proposed. Okay. There was no evidence as to the current academic state of the student. I gather everyone agrees that's not in the case at the moment. Yeah. I don't see how it could be, Your Honor. There was no record, no proof. It was beyond the scope of the remand, and it – Okay. If we don't have to deal with it, we're getting somewhere. Well, thank you, Your Honor. Judge Bianco, let me just ask you. It's a relatively small dollar amount compared to the other requests. Yes. But the – Dr. Bader's – the $740 for – Family therapy? Yeah. I guess I don't understand why that wouldn't be compensable. Dr. Bader is obviously qualified. She provided services to, you know, for autism-related behavioral issues. So why wouldn't the $740 be – Our position was it didn't fit into the narrow categories in the settlement agreement, and Dr. Bader specifically rejected that she was providing any of those services. She said she was providing family therapy, and she coded her bills for payment purposes as family therapy. And, in fact, she said she was teaching – What about the communications clinic of Connecticut also provided, I think, services that were directed to the family, and that was – They are – If that's the speech, Your Honor, and I think it is, that's included within the court's order on the $30-something thousand that the board has been ordered to reimburse. We didn't contest the speech services to the extent the invoices were provided, and we certainly didn't with respect to the ABA providers or Dr. Fiorilli. The board-certified behavior – I don't understand why that wouldn't be included in autism consulting services. It seems like Dr. Bader's work, whether it's directed at the family or not, it was directed towards behavioral issues. Dr. Bader was qualified, so I'm not sure that I understand that. Well, the distinction we're drawing, Your Honor, is that we didn't agree to provide family therapy. All right. We agreed just to those narrow categories and – And you're saying it was coded as family therapy? Is that what I heard you say? Yes. Yeah, it was coded as family therapy. She agreed that that's what she was providing. She wasn't providing the services that are set forth in the settlement agreement.  It is a relatively modest dollar figure, but it wasn't – It wasn't one of the categories within the settlement agreement that the board agreed to reimburse the parent for. But in terms of the reality of the services that were provided, the doctor worked with the child on behavioral issues. The doctor worked with the family with regard to how to deal with certain in-home, act-out behaviors. Of the child, right? Well, yes, but that's not – the way we saw the record, it was more about providing – Your position is it was not providing an education. No, but it was more about providing parenting skills. Let me say it like that. And that's the distinction. It was more focused on how the parents should deal with certain issues versus helping the student, helping the child. So that was clearly outside the scope of the 2009 settlement agreement, and that's why the court drew that distinction. And not only that, Dr. Bader didn't contest that. Dr. Bader testified that she was providing parenting skills. Generalization services, I think, was the term she used. Well, Dr. Bader had already been paid, so I don't know why she would contest it. Well, she didn't dispute, Your Honor, that she was providing something other than family therapy. Okay. So if I may summarize, if there are no further questions, the appellate board urges this court to affirm the decision of the district court. The district court had a limited remand, and it properly calculated the value of the home program that was provided under the 2009 settlement agreement plus transportation as $37,012.87. And we would urge this court to affirm the decision of the lower court. We haven't talked about transportation, but just like the parent made a claim for her time and she isn't a qualified provider, she also made a claim for something other than mileage with respect to taking the student to various places. The agreement provides for mileage reimbursement only, and there are decisions cited in our brief that the parent is entitled to cost reimbursement, not wages. So for all those reasons, we would urge this court to affirm the decision of the district court. Thank you very much. Thank you, Mr. Bertullo.  Thank you, Your Honor. I would like to clarify a couple of things here because it is getting mixed up. Stay put reimbursement, and this court has said, the board's obligation under stay put is rooted in statute for stay put purposes and not in contract. If you look at DOE, again, under DOE, we're talking about the appropriate equitable relief for stay put violation is reimbursement or compensatory education or both. So to clarify for the compensatory education portion, no, we are not contesting the district court's decision that the parent should be able to go back for compensatory education to supplement the record for that claim. That's under stay put, not under fake. That's under the stay put gross violation of six years of not providing any services. The stay put violation for reimbursement, again, is not under the Burlington-Carter conditional model of reimbursement. That is for something entirely different. What is happening here is we are talking only about the stay put pendency relief. We are talking about the time period from when the IEP was rejected six years later to when the court made the decision that stay put reimbursement was valid under the agreed upon contract, which the council just agreed was the 250 per week for the duration until the August 4th, 2016 decision. So under that, that's a simple calculation. We don't even get to the county issue, I'm sorry. That's okay. Just judge me off. Maybe I'm confused. In the prior appeal, we did not expressly determine that there was a violation of the stay put provision, right? I don't remember seeing that. Yeah, that was what I understood in that decision because it was bifurcated. Finding the fake was appropriate for that particular time period. But in the meantime, while that dispute over fake under that IEP was being adjudicated, stay put absolutely came into play. And that is a board obligation, not a parent obligation. And so we don't get to the fact that, well, during the pendency, the parent made some sort of change. And so our risk is no longer there. No, this was a parent dispute over the IEP. I understood the prior appeal and I know Judge Jacobs was on it, so he would know best. But I understood it to be rejecting the claim that TD was denied a FAPE for the 2010-2001 school year and then just structured a limited remedy for the board's failure to provide funding for the home-based stay put placement. Isn't that what the decision was? I'm a little confused about how you just phrased that. But my understanding was that FAPE was appropriately provided by the board, that that was the decision. We were not contesting that at all. But the stay put provision and how the pendency time period and how that was calculated was what we were contesting. When you're talking about the application of stay put remedies until the resolution of the case, you're relying on the settlement contract, correct? No, I'm relying on the statutory law, 1415J, and the case law under it, specifically Doe and others. For example, Honig v. Doe and TM v. Cornwall, the stay put pendency relief is an automatic and unconditional obligation placed on the board. I understand that. The question is, when does it end? I agree with everything you say, but I need an answer to the question of what does the statute say as to when the stay put remedies end? At the conclusion of the administrative and judicial proceedings is when the case law says it ends. So that is that period of the case, of course, 2016. Can you give me a case that says that? I believe there were cases in there. I'm going to find that. I had it written down in some of my notes. I believe Doe is one of those important ones, but not in those. A little more. All right, thank you very much. Lawrence County. Which county? Lawrence County, I think, was one. And then the next one,  and that's Cone and Vigo, Drinker, T.M.V. and Cornwall. Those are the cases that I have. Z, V, Z, Z, Omba. Z, V, I versus Omba. That's another one. All of those cases really indicate if the time period of the stay put pendency has always been my understanding in all the cases that I've had from when you request to process hearings till administrative and judicial proceedings are ended. Okay, thank you. August 4th, 2016. And I don't think counsel disagreed. I've heard him say a couple of times that that's undisputed date is the end of the stay put provision period. All right, thank you, Ms. Stevenson. And thank you to Mr. Bertullo as well. We'll reserve decision. Have a good day. Thank you, Your Honor. All right, that completes the business of the court today. With thanks to Ms. Rodriguez, I'll ask her to adjourn court. The court stands adjourned.